Vernon R. TAYLOR, Appellant,

v.

Leonard E. GOLDAMMER and
Goldammer and Associates,
Inc., Respondents.

No. WD 52545.

Missouri Court of Appeals,
Western District.

March 4, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 29, 1997.

Arnold Robert Day, Jr., Kansas City, for appellant.

Randall Dean Crawford, Kansas City, for respondents.

SPINDEN, Judge.

Vernon R. Taylor sued his employer, Goldammer and Associates, Inc., and Leonard E. Goldammer for unpaid wages and the penalty imposed for those unpaid wages pursuant to § 290.110, RSMo 1994. The circuit court concluded that Taylor was not entitled to the penalty, and Taylor appeals. We reverse and remand.

Goldammer, as president and shareholder of the corporation, hired Taylor to perform accounting and office managing functions for the corporation. Taylor began working for the company on September 1, 1994, for an annual salary of $39,500.

On November 21, 1994, Goldammer terminated Taylor's employment and gave Taylor a $4617.04 check drawn on the corporate

account for the net wages owed Taylor.[1] Taylor decided that this check was deficient by $632.

On November 23, 1994, Taylor sent a letter to Goldammer, not the corporation, which said:

Additionally, the amount of salary paid to me was incorrect. An additional $632.00 is due to me.

$$\frac{\$39,500}{12} = \$3,292 \quad 2.5 \times \$3,292 = \$8,230$$

$$\frac{\$39,500}{[250]^2} = \$\ 158 \quad 4 \times \$\ 158 = \$\ 632$$

Total Gross Earned     $8,862

Pay Dates: September 1—November 15
    (2.5 months)
    November 16, 17, 18, 21 (4 days)
Salary Received:
    November 15 – $1,600.00 (gross)
    November 21 – $6,629.15 (gross)
       $8,229.15

You can mail checks for ... my remaining salary due ... to our home at [address given] on December 1st.

Sincerely,

Vernon

The letter also referred to a payment on a promissory note which Goldammer owed Taylor. Goldammer did not pay Taylor the wages, and in early December 1994, Goldammer told Taylor that he was not due any more wages because he had been paid in full.

On April 10, 1995, Taylor's attorney sent Goldammer a letter in which he demanded payment of the promissory note and the unpaid wages of $632. The letter also warned that under certain conditions penalties could attach for failure to pay the wages within seven days. On April 17, 1995, although Goldammer still maintained that Taylor was not owed any wages, he delivered a check drawn upon the corporate account to Taylor's attorney for the claimed wages less withholdings, a total of $438.29. Taylor did not negotiate the check. His attorney kept it.

Taylor sued Goldammer, individually, and Goldammer and Associates for the unpaid wages and the statutory penalty. He also sued for payment of the promissory note. After trial, the circuit court concluded:

The Court accepts [Taylor's] contention that Mr. Goldammer was an appropriate recipient of a demand for wages under Section 290.110. The Court rejects the contention that [the letter of November 23, 1994,] was such a demand. The demand of April 10, 1995 ... was paid within seven days. The Court finds that $632.00 in wages were due [Taylor] at the time [both letters] were mailed. It is the judgment of the Court that ... Taylor recover from ... Goldammer and Associates, Inc., on [the unpaid wages count] the sum of $632.00 and that costs be assessed against ... Goldammer and Associates, Inc. On [the statutory penalty count], it is adjudged that [Taylor] take nothing against ... Leonard Goldammer or ... Goldammer and Associates, Inc.

Taylor appeals.

■ Taylor contends that the trial court erred in concluding that the November 23, 1994, letter did not constitute a written demand for wages within the meaning of § 290.110. We agree.

Section 290.110 says:

Whenever any person, firm or corporation doing business in this state shall discharge, with or without cause, or refuse to further employ any servant or employee thereof, the unpaid wages of the servant or employee then earned at the contract rate, without abatement or deduction, shall be and become due and payable on the day of the discharge or refusal to longer employ and the servant or employee may request in writing of his foreman or the keeper of his time to have the money due him, or a valid check therefor, sent to any station or office where a regular agent is kept; and if

---

1. Taylor was not paid at regular intervals like the company's other employees. Taylor received his first paycheck for $1600 on November 15, 1994—2½ months after he started work.

2. Taylor did not enter a figure here. We presume that he intended to enter 250 because it is

the only number which can be divided into 39,500 to get a result of 158. The number of work days in a year is 260. We cannot verify Taylor's calculations. The circuit court should address this matter on remand.

the money or a valid check therefor, does not reach the station or office within seven days from the date it is so requested, then as a penalty for such nonpayment the wages of the servant or employee shall continue from the date of the discharge or refusal to further employ, at the same rate until paid; provided, such wages shall not continue more than sixty days. This section shall not apply in the case of an employee whose remuneration for work is based primarily on commissions and whose duties include collection of accounts, care of a stock or merchandise and similar activities and where an audit is necessary or customary in order to determine the net amount due.

Goldammer contends that the November 23, 1994, letter was not a demand for wages because the letter: (1) was addressed only to Goldammer and not to the corporation; (2) did not demand payment of the unpaid wages; (3) allowed for payment of the wages beyond the time required by § 290.110;[3] (4) was unsigned; (5) included personal matters; and (6) incorrectly calculated unpaid wages because, even if the wages were owed, the amount due should have been the net amount on $632, not the gross amount.

Section 290.110 requires an employee to "request in writing of his foreman or the keeper of his time to have the money due him, or a valid check therefor, sent to any station or office where a regular agent is kept[.]" If the money is not sent to the employee's "station or office" within seven days from the date requested, the statute assesses a penalty: the employee's wages continue until the unpaid wages are paid, but for no more than 60 days.

The November 23 letter satisfied the requirements of § 290.110. The statute does not require that the letter be addressed to the corporation—only to the "foreman or the keeper of his time." Goldammer does not contest that he was Taylor's "foreman or the keeper of his time" or that he received Taylor's letter. The letter requested Goldam-

mer to mail a check for the "remaining salary due." This was sufficient to satisfy the statute's requirements.

The statute does not require that the letter give a time certain for payment of the wages, or that it be signed, or that it include only the subject of unpaid wages, or that it correctly calculate the amount of unpaid wages. It need only request the foreman or timekeeper to send unpaid wages to "any office or station where a regular agent is kept[.]" Taylor's letter did that.

Hence, the circuit court erred in concluding that the November 23, 1994, letter was insufficient to satisfy the requirements of § 290.110. Goldammer and Associates did not appeal the circuit court's conclusion that it owed Taylor $632 in unpaid wages; thus, we remand this case to the circuit court for it to calculate the amount of penalty due Taylor.[4]

■ Taylor also contends that the circuit court erred in finding that Goldammer, individually, was not liable for the wages and penalty. We disagree.

Taylor contends that the testimony of Dean Sparks, a stockholder and employee of the corporation, establishes that Goldammer agreed to pay for Taylor's wages. Sparks said that he objected to Goldammer's hiring Taylor and that Goldammer told him that he would pay Taylor from personal funds. Sparks said all of the corporation's employees, except Taylor, were paid semi-monthly.

■ The circuit court, however, did not have to believe Sparks. We do not weigh the evidence, and we defer to the circuit court's superior ability to judge witness credibility. *Marro v. Daniels*, 914 S.W.2d 16, 17 (Mo. App.1995).

Taylor also contends that his dealing only with Goldammer in negotiating employment terms and wages established that Goldammer was liable for his wages and the statutory penalty. He points to Goldammer's trial testimony in which Goldammer referred to

---

**3.** Payment of the wages on December 1, 1994, would have been eight days from the date Taylor mailed the letter (not counting November 23).

**4.** At trial, the parties disagreed as to Taylor's daily pay rate; hence, we remand so the circuit court can resolve this controversy and determine the penalty.

him as "my employee" and commented, "I started paying Mr. Taylor." He also relies on Goldammer's promises to pay him his wages when his paychecks were delayed during his employment. Taylor asserts, "Goldammer's statements, promises and conduct, and [Taylor's] agreement to come to work and then to wait on his wages while continuing to work constitute a separate agreement requiring Goldammer (independent of Associates' obligation) to pay [Taylor] wages for the work he performed." We disagree.

Considering the evidence in the light most favorable to Goldammer and giving him the benefit of all reasonable inferences and disregarding any contrary evidence, *Marro,* 914 S.W.2d at 17, we find that Goldammer was not individually liable for the wages and penalties. The evidence established that Goldammer, as the corporation's president, had the authority to hire Taylor as a corporate employee. Goldammer testified that he did not hire Taylor to work for him individually and that all of Taylor's pay checks were written on the corporation's account.

Taylor also asserts that Goldammer's actions, promises and inducements estop him from denying personal liability for the wages and the penalty. Taylor, however, did not plead promissory estoppel in his petition and did not present evidence on this theory. We will not consider matters raised for the first time on appeal, and we will not convict the circuit court of error on an issue which it was not accorded an opportunity to rule. *Lincoln Credit Company v. Peach,* 636 S.W.2d 31, 36 (Mo. banc 1982), *appeal dismissed,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983).

We reverse the judgment of the circuit court and remand for it to calculate the amount of penalty due to Taylor from Goldammer and Associates.

SMART, P.J., and ELLIS, J., concur.